STATE OF CONNECTICUT *v.* KEVIN MARTIN
(12818)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued April 10—decision released August 12, 1986

*Jon C. Blue,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Kevin Martin, was found guilty by a jury of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] He was sentenced to a term of imprisonment of ten years, execution suspended after five years. The defendant appeals from the judgment of conviction, claiming that the trial court erred: (1) in summarily denying the defense counsel's motion to withdraw and his motion for mistrial based on counsel's alleged conflict of interest; and (2) in denying the defendant the right to cross-examine the complaining witness as to prior acts of misconduct. The defendant also claims that he was denied effective assistance of counsel. We find error and remand for a new trial.

The jury could reasonably have found the following facts. In the early morning hours of September 20, 1983, the victim, Solomon Reid, entered the R & F Big Time Restaurant in New Haven. While there, the victim conversed with two of his friends, the defendant and Johnnie Clark. The victim had grown up with Clark and had known the defendant since the previous summer. About twenty minutes after he had arrived, the victim left the restaurant to go to his girlfriend's house. As he walked down the street, he was stopped by the

[1] General Statutes § 53a-134 (a) (4) provides: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun, or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

defendant and Clark. Clark grabbed him from behind and the defendant stepped in front of him. The two men then pulled the victim into a nearby garage. While inside the garage, Clark said to the victim: "Give it up. I won't hurt you." The victim took approximately $150 out of his pocket and handed it to the defendant. Clark and the defendant then left.

At trial, there was conflicting testimony as to whether the defendant and Clark were armed during the robbery. The victim testified that both the defendant and Clark displayed firearms. Clark, on the other hand, also testifying for the state, said that, although he had threatened the victim with the use of a firearm, neither he nor the defendant displayed or even had a firearm in their possession.

After the robbery, the victim returned to the restaurant and told the manager about the incident. After the manager drove the victim home, the victim called the police. Thereafter, the victim returned to the restaurant where he met an officer of the New Haven police department. The police officer drove him by the defendant's house and then to the police station, where he viewed a tray of photographs and identified Clark and the defendant as his assailants. Subsequently, the defendant was arrested and charged with robbery in the first degree.

I

The defendant's first claim of error is that his sixth amendment right to effective assistance of counsel was violated by the trial court's summary denial of his defense counsel's motion to withdraw because of a conflict of interest.[2]

---

[2] By reviewing this claim, we do not repudiate our previous holding that a claim of ineffective assistance of counsel is normally inappropriate on appeal and must be reserved for postconviction habeas corpus relief. See *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480 (1986).

For the purpose of discussing this issue, we first must explain the procedural context from which this claim arose. During the direct examination of the state's final witness, Johnnie Clark, the state asked Clark why he was going to rob the victim, to which Clark responded, "Because of what Fred Dennison did." The defendant's attorney immediately moved to withdraw and for a mistrial indicating that he would state his reason outside the presence of the jury. Once the jury had been excused, the defendant's attorney stated: "Your Honor, I move for a mistrial at this time because Fred Dennison is a client of mine and I now have a conflict of interest." The trial court summarily denied the motion. The defendant's attorney attempted to state for the record the grounds for the motion, only to be interrupted by the trial court.[3] The defendant argues that the trial

---

[3] The transcript of this colloquy discloses the following:

"Mr. Rademacher: Your Honor, at this time I would ask the jury be excused. I am going to ask for a mistrial and I would like to state the reason outside the presence of the jury.

"(Whereupon, the jury left the courtroom.)

"Mr. Rademacher: Your Honor, I move for a mistrial at this time because Fred Dennison is a client of mine and I now have a conflict of interest.

"The Court: Who?

"Mr. Rademacher: I represent Fred Dennison. I have a conflict of interest and I am going to have to withdraw from the case now that his name has come up in this trial.

"The Court: I will deny your motion.

"Mr. Rademacher: Your Honor, I represented this individual.

"The Court: I denied your motion, counsel. Take an exception if you care to.

"Mr. Rademacher: I would ask—

"The Court: No further inquiry concerning that. A name was mentioned, that's all.

"Mr. Rademacher: Your Honor, he is the person—

"The Court: No more, counsel. I denied your motion. Call the jury.

"Mr. Rademacher: Are you denying me the opportunity to state the grounds?

"The Court: You just did.

"Mr. Rademacher: I would like to indicate who this individual is.

"The Court: You said he is a client of yours.

court's refusal to inquire into the details of the claimed conflict of interest violated the defendant's constitutional right to effective assistance of counsel. We agree.

The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel. *Powell* v. *Alabama,* 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *Festo* v. *Luckart,* 191 Conn. 622, 626, 469 A.2d 1181 (1983). " 'Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest.' *Wood* v. *Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981)." *Festo* v. *Luckart,* supra, 626–27. This right requires that the assistance of counsel be "untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." *Glasser* v. *United States,* 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed.

"Mr. Rademacher: He has been a longtime client of this office. He knows all the individuals involved here.

"The Court: I denied your motion. There is no indication as to what relationship this man had to any of these people here. And there will be no further—

"Mr. Rademacher: That's not the point, your Honor. His name has come up.

"The Court: I denied the motion. Bring the jury in, Sheriff.

"Mr. Rademacher: Your Honor, I would like to say at this time that my client has been denied the effective assistance of counsel because of what was discussed outside the presence of the jury, and I am going to have to cross-examine this person under a substantial handicap.

"The Court: You may cross-examine to your heart's delight, but do not mention that name.

"Mr. Rademacher: If I did not have this conflict of interest—

"The Court: Counsel, do not do that; I heard your motion and I denied it. Now, let's move it."

The state argues that the trial judge afforded defense counsel ample opportunity to state for the record the basis of his asserted conflict of interest. Our reading of the record, however, reveals that the trial judge cut off the defendant's attorney, giving him little opportunity to explain the basis of his conflict of interest.

680 (1942); *State* v. *Marion,* 175 Conn. 211, 216, 397 A.2d 533 (1978). Moreover, one of the principal safeguards of this right is the rule announced by this court that "[a trial] court must explore the possibility of conflict . . . when it *knows or reasonably should know of a conflict* . . . ." (Emphasis added.) *Festo* v. *Luckart,* supra, 629.

The two leading cases on the trial court's duty to inquire into possible conflicts of interest, *Holloway* v. *Arkansas,* 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), and *Cuyler* v. *Sullivan,* 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), both involved multiple representation of criminal codefendants. In *Holloway* v. *Arkansas,* supra, the United States Supreme Court held that a trial court's failure to investigate defense counsel's timely assertion of a conflict of interest violated the accused's sixth amendment right to effective assistance of counsel. The defendant in *Holloway* was one of three codefendants represented by the same attorney. A month before trial and again during trial, the defendant filed a motion for the appointment of separate counsel. The defendant alleged the existence of a conflict of interest due to the fact that each defendant intended to testify and possibly implicate the others, thus inhibiting full cross-examination. The trial judge summarily denied the motion and the Arkansas Supreme Court affirmed. The United States Supreme Court reversed, stating that a constitutional violation occurs if the trial court fails either to grant a defendant's request for separate counsel or, in the alternative, "to take adequate steps to ascertain whether the risk [is] too remote to warrant separate counsel." *Holloway* v. *Arkansas,* supra, 484. Thus, the trial court's failure to investigate defense counsel's timely allegation of a conflict of interest constituted a violation of the defendant's sixth amendment right. Id.

In *Cuyler* v. *Sullivan,* supra, 347, the court held that a trial court is under no obligation to initiate inquiry "[u]nless [it] knows or reasonably should know that a particular conflict exists . . . . " See *Festo* v. *Luckart,* supra, 628. However, the court reaffirmed that under *Holloway,* "a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." *Cuyler* v. *Sullivan,* supra, 348. In *Cuyler,* the court also noted that defense counsel has "an ethical obligation to avoid conflicting representations" and must immediately advise the court when a conflict of interest arises during the course of, as well as prior to, trial. Id., 346.

Although the United States Supreme Court has only addressed this conflict of interest issue in cases involving multiple representation of criminal codefendants, the defendant in the present case is entitled to no less constitutional protection. See *State* v. *Gonsalves,* 476 A.2d 108, 113 (R.I. 1984).

"These principles concerning conflict of interest [announced by the court in *Holloway* and *Cuyler*] are not restricted to cases of joint representation of [criminal] co-defendants at a single trial. See, e.g., *Wood* v. *Georgia,* [supra] (potential conflict between defendants' interest and the interest of their employer who paid [for] trial counsel)." *United States* v. *Winkle,* 722 F.2d 605, 610 (10th Cir. 1983) (conflict because defendant's attorney had previously represented the government's key witness);[4] see also *Ross* v. *Heyne,* 638 F.2d 979 (7th

---

[4] It is also interesting to note the history of *Brown* v. *United States,* 625 F.2d 210 (9th Cir. 1979) (per curiam). In *Brown,* the court of appeals had affirmed a denial of postconviction relief despite a claim of ineffective assistance of counsel due to a conflict of interest arising from simultaneous representation of a defendant and a government witness; the court had reasoned that there was no prejudice from dual representation. Id., 212.

The United States Supreme Court vacated judgment; *Brown* v. *United States,* 446 U.S. 962, 100 S. Ct. 2936, 64 L. Ed. 2d 821 (1980); for further

Cir. 1980) (conflict of interest arising from a trial in which one attorney represented the defendant while his law partner represented codefendants who testified for the prosecution); *Matter of Darr,* 143 Cal. App. 3d 500, 191 Cal. Rptr. 882 (1983) (conflict arising out of defense counsel's concurrent representation of defendant and key prosecution witness); *State* v. *Gonsalves,* supra (conflict because defense counsel previously represented the individual who had actually committed the crime for which the defendant was being tried). As the court states in *Darr,* "[i]t is not representation of more than one client which deprives a defendant of his constitutional right to effective assistance of counsel, it is representation of clients with adverse interests." *Matter of Darr,* supra, 509. LaFave and Israel point out that "[t]he *Wood* [v. *Georgia,* supra] citation of [*Cuyler* v. *Sullivan,* supra,] also is significant because it indicates that the constitutional duty to conduct an inquiry will not be limited to conflicts presented by multiple representation of codefendants." 2 LaFave & Israel, Criminal Procedure (1984) § 11.9, p. 86. Thus, the fact that the conflict of interest in the present case arose out of a situation other than multiple representation of criminal codefendants does not prevent the application of the principles set forth by the United States Supreme Court in *Holloway* v. *Arkansas,* supra. See *United States* v. *Winkle,* supra, 610; *State* v. *Gonsalves,* supra.

In the present case, the defendant's attorney explicitly informed the trial court that a conflict of interest existed. Accordingly, the trial court was under a duty to investigate the defense counsel's assertion of a conflict of interest. See *Holloway* v. *Arkansas,* supra.

consideration in light of *Cuyler* v. *Sullivan,* 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), thus suggesting an inclination to apply the conflict of interest principle to cases other than multiple representation of criminal codefendants.

Yet, without inquiry as to the legitimacy of the attorney's assertion, the court summarily denied the defendant's motion. This was error. To safeguard a criminal defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial judge in a timely manner.[5] See *Holloway* v. *Arkansas*, supra; *Festo* v. *Luckart*, supra. Here, as in *Wood*, the "record does demonstrate that the *possibility* of a conflict of interest was sufficiently apparent . . . to impose upon the court a duty to inquire further." (Emphasis in original.) *Wood* v. *Georgia*, supra, 272. While *Holloway* v. *Arkansas*, supra, 486, emphasized that it was not "transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict," the trial court "must be able, and be freely permitted, to rely upon counsel's representation that the possibility of such a conflict does or does not exist." *Kaplan* v. *United States*, 375 F.2d 895, 897 (9th Cir.), cert. denied, 389 U.S. 839, 88 S. Ct. 67, 19 L. Ed. 2d 103 (1967); *Willis* v. *United States*, 614 F.2d 1200, 1206 (9th Cir. 1980). The reliance in such an instance is upon "the solemn representation of a fact made by [the] attorney as an officer of the court." *Kaplan* v. *United States*, supra. The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case.

The state argues that to require the court to entertain such a motion at this point in the trial would encourage attorneys to withhold information relative to a possible conflict of interest until they are satisfied

---

[5] The state argues that the defense counsel's motion to withdraw was untimely in that the conflict was not brought to the attention of the trial judge until near the close of the state's case. We find, however, that the motion was timely. On the basis of the record before us, the defendant's attorney moved to withdraw at the first opportunity, as soon as the client's name came up.

that the trial is not going as anticipated or desired. We disagree. While we recognize that the court has an obvious interest in avoiding such abusive practices, our holding does not undermine this interest. When a motion to withdraw is made for dilatory or abusive purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics. Cf. *Holloway* v. *Arkansas,* supra, 486–87. Nor does our holding prevent a trial court from exploring the adequacy of the basis for counsel's representations of conflict of interest. In fact, that is the very purpose of the inquiry. In this case, the trial court simply failed to make *any* inquiry in response to an explicit representation of a possible conflict of interest.

We hold, then, that when counsel makes a timely assertion of a conflict of interest, the trial court is under an affirmative obligation to make an adequate inquiry on the record to establish whether there is a conflict of interest. In this case, the trial court summarily denied the defendant's motion. The trial court's failure to inquire was error. Reversal is required. See *Holloway* v. *Arkansas,* supra.

## II

The defendant's second claim of error is that the trial court erroneously denied his right to cross-examine the victim concerning acts of misconduct indicative of a lack of veracity. We address this claim only because it may recur upon retrial.

For the purpose of discussing this issue, we first must explain the procedural context from which this claim arose. At the conclusion of the victim's direct examination, the state represented, outside the presence of the jury, that the victim was on probation for the crime of larceny in the fifth degree. During cross-examination, the trial court permitted the defendant to show the bare fact that the victim was on probation

but forbade the defendant from mentioning either the conviction or the underlying acts of misconduct. The defendant objected claiming that, without mentioning the conviction, he was entitled to cross-examine the victim concerning "acts of misconduct that go to veracity," arguing that "[c]learly when somebody steals something, that goes to his honesty and veracity." The court overruled the objection and refused to permit any cross-examination on the matter. From the colloquy between the court and counsel,[6] it is clear that the trial

---

[6] The transcript of this colloquy discloses the following:

"The Court: All set, counsel?

"Mr. Rademacher: Do you have a copy of his report? He is on probation. For the record, your Honor, the State's Attorney has indicated to me he only has a larceny in the fifth degree.

"The Court: Who is this?

"Mr. Rademacher: Mr. Reid.

"The Court: That he is presently on probation.

"Mr. Fasano: That is correct.

"The Court: What's fifth degree? Is that a misdemeanor?

"Mr. Fasano: It is a misdemeanor.

"The Court: Remember, counsel, you are not permitted to ask that.

"Mr. Rademacher: Your Honor, I am permitted to inquire as to prior acts of misconduct. Now, without mentioning 'were you convicted,' I cannot ask him if he was ever involved in stealing.

"The Court: No, no. Don't do it. I will hold you in contempt if you do it. You may not refer to that. That statute for credibility—

"Mr. Rademacher: The case law is clear, your Honor.

"The Court: — only pertains to felonies.

"Mr. Rademacher: And to acts of misconduct that goes to veracity. Clearly when somebody steals something, that goes to his honesty and veracity.

"The Court: Don't do it, counsel.

"Mr. Rademacher: If your Honor rules I cannot do it, fine.

"The Court: I just so ruled.

"Mr. Rademacher: I am stating the basis for why I should be allowed to.

"The Court: It is a misdemeanor and under the statutes, it may not be used.

"Mr. Rademacher: I take an exception to the ruling.

"The Court: Exception may be noted."

Later, when the examination of the victim concluded, the following colloquy took place:

"Mr. Rademacher: Before we bring in the jury, I would like to draw your Honor's attention to one point I raised earlier and you did not allow me

judge predicated his ruling on General Statutes § 52-145.[7] The defendant duly excepted.

The right to cross-examine a witness concerning specific acts of misconduct is limited in three distinct ways. First, cross-examination may only extend to specific acts of misconduct other than a felony conviction if

to question Solomon Reid as to his prior larceny conviction I have raised in terms of 'have you ever stolen anything,' not the conviction itself.

"And I have gone back to my office and found some case law to support my position which is that I may be allowed to impeach by specific acts of misconduct which evidence a lack of veracity. Where somebody has committed a larceny, the larcenor's intent indicates a lack of truthfulness.

"The Court: This is a misdemeanor.

"Mr. Rademacher: It is a misdemeanor. All felonies are admissible provided not too remote in time, et cetera. Misdemeanors, most are not admissible; only ones that speak to lack of veracity of the witness.

"In other words, false swearing would be the best example. But I think larceny is also included within the category of that act which evidences a lack of veracity.

"The Court: If they are felonies.

"Mr. Rademacher: Well, if they are felonies, certainly, but also it is not the fact that he has been convicted of a misdemeanor but the fact that I have a right to.

"The Court: You took your exception, counsel. And the witness is completed.

"Mr. Fasano: Just for the record, the question that was asked was, 'Have you ever done any stealing' or something of that nature. He was not asking anything specific at that point.

"The Court: And you asked three times about his probation.

"Mr. Fasano: It was also put in front of the jury that he was on probation.

"The Court: Twice. In any event, that's water over the dam. You took your exception.

"Mr. Rademacher: I wanted to make clear as on page 114 there are a number of authorities.

"The Court: You took your exception and you made your argument.

"Mr. Rademacher: Again, I will take an exception to your Honor's ruling not allowing me to bring him back and put him on the stand and ask that question."

[7] General Statutes § 52-145 provides: "(a) A person shall not be disqualified as a witness in any action because of, (1) his interest in the outcome of the action as a party or otherwise, (2) his disbelief in the existence of a supreme being, or (3) his conviction of crime.

"(b) A person's interest in the outcome of the action or his conviction of crime may be shown for the purpose of affecting his credibility."

those acts bear a " 'special significance upon the issue of veracity . . . .' " *State* v. *Marra,* 195 Conn. 421, 439, 489 A.2d 350 (1985), quoting *State* v. *Orsini,* 187 Conn. 264, 268, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982); see *State* v. *Dolphin,* 195 Conn. 444, 459, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); McCormick, Evidence (3d Ed.) § 42. Second, "[w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court." *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985). Third, extrinsic evidence of such acts is inadmissible. *State* v. *Guthridge,* 164 Conn. 145, 157, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973); *Martyn* v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700 (1964).

In the present case, the trial court was correct in ruling that evidence of the victim's prior conviction of larceny in the fifth degree was inadmissible under § 52-145. *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 208 A.2d 341 (1965).[8] The record reveals, however, that the trial court also relied on this statute to preclude cross-examination of the victim concerning specific acts of misconduct indicating a lack of veracity. It is clear from the record that the statutory rule was confused with the rule permitting cross-examination concerning specific acts of misconduct indicating a lack of veracity. This application of § 52-145 was erroneous; "[t]he two methods of cross-examination are wholly dissimilar." *Heating Acceptance Corporation* v. *Patterson,* supra, 472. The statutory rule "does not prohibit legitimate cross-examination

---

[8] The defendant also claims that General Statutes § 52-145 does not prohibit the admission of a prior misdemeanor conviction. Because we refuse to depart from our holding in *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 208 A.2d 341 (1965), we need not address this claim.

into specific acts of misconduct which indicate a lack of veracity . . . ." *State* v. *Guthridge,* supra.

The defendant's attempt to impeach the credibility of the victim was not based on the latter's criminal conviction. The defendant made it clear that, without mentioning the larceny conviction, he wished to ask the victim if he "was ever involved in stealing"; that is, the defendant sought to impeach the credibility of the victim by exposing to the jury the witness' capacity for veracity. It is generally held that larcenous acts tend to show a lack of veracity. As this court recently stated, larcenous crimes "by their very nature indicate dishonesty or tendency to make false statement." *State* v. *Geyer,* 194 Conn. 1, 12, 480 A.2d 489 (1984); *State* v. *Carter,* 189 Conn. 631, 643, 458 A.2d 379 (1983); *State* v. *Nardini,* 187 Conn. 513, 526, 447 A.2d 396 (1982). Moreover, " '[i]n common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects on a man's honesty and integrity.' *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967) (Burger, J.) . . . ." *State* v. *Glenn,* 194 Conn. 483, 499, 481 A.2d 741 (1984). " 'It does not follow, however, that if the acts inquired about are indicative of a lack of veracity, the court must permit the cross-examination. Whether to permit it lies largely within the court's discretion.' *Vogel* v. *Sylvester,* 148 Conn. 666, 676, 174 A.2d 122 (1961); *Shailer* v. *Bullock,* 78 Conn. 65, 70, 61 A. 65 (1905); *State* v. *Ferguson,* 71 Conn. 227, 232, 41 A. 769 (1898)." *State* v. *Roma,* 199 Conn. 110, 117, 505 A.2d 717 (1986). Our inquiry, then, turns to whether the trial court abused its discretion in refusing to permit the cross-examination.

The state argues that we should sustain the trial court's exclusion of the cross-examination as to prior acts of misconduct on the ground that the trial court had the discretionary authority to prohibit this ques-

tioning. The defendant, on the other hand, argues that the trial judge's misplaced reliance on § 52-145 to preclude the cross-examination prevented the trial judge from exercising *any* discretion. The defendant claims that the trial judge's failure to exercise its discretion constituted an abuse of discretion. We agree with the defendant.

While it is normally true that this court will refrain from interfering with a trial court's exercise of discretion; *State* v. *DeForge,* 194 Conn. 392, 396, 480 A.2d 547 (1984); *Vogel* v. *Sylvester,* supra; this presupposes that the trial court did in fact *exercise* its discretion. "[D]iscretion 'imports something more than leeway in decision-making.' *State* v. *Onofrio,* 179 Conn. 23, 29, 425 A.2d 560 (1979)." *Sturman* v. *Socha,* 191 Conn. 1, 7, 463 A.2d 527 (1983). It means " 'a legal discretion, to be *exercised* in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (Emphasis added.) *State* v. *Onofrio,* supra, quoting *Hammerberg* v. *Leinert,* 132 Conn. 596, 604–605, 46 A.2d 420 (1946); *State* v. *Battle,* 170 Conn. 469, 476, 365 A.2d 1100 (1976). Where, as here, the trial court is properly called upon to exercise its discretion, its failure to do so is error.

In the context of cross-examination as to acts of misconduct, the trial court has discretionary authority to decide whether and to what extent to allow cross-examination. The court is to determine whether the probative value of the evidence outweighs its prejudicial effect. *Vogel* v. *Sylvester,* supra. It is apparent from a review of the transcript that the trial court, in relying on § 52-145 to preclude the cross-examination, did not even begin to exercise this discretion. Indeed, the record reveals that the trial judge thought he had no discretion; that is, it appears the trial judge believed that § 52-145 prohibited the cross-examination as a

matter of law. We conclude that the exclusion of the cross-examination on the ground that it was prohibited by § 52-145 as a matter of law was erroneous. Because we have already ordered a new trial pursuant to Part I of this opinion, it is unnecessary to consider whether this error would have been sufficiently harmful to require a new trial.

### III

The defendant's third claim of error is that he was denied effective assistance of counsel. Because we have found reversible error on the defendant's first claim, we need not address this claim.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other justices concurred.