[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 PROCEDURAL HISTORY
The petitioner, who filed a pro se application for writ of habeas corpus on November 8, 2000, alleges that his conviction is illegal because of ineffective assistance of counsel. The petitioner indicated on the application that he wanted an attorney representing him in this habeas corpus claim. Accordingly, the Court ordered that an indigency determination be completed in accordance with General Statutes §51-296(a). The Office of the Chief Public Defender, Habeas Corpus Unit CT Page 16666 filed an Appearance and a Motion for Extension of Time to File Motion to Appoint Special Public Defender on February 20, 2001. The motion indicated that: the petitioner was eligible for representation by appointed counsel; the Habeas Corpus Unit of the Office of the Chief Public Defender had a conflict of interest that precluded substantive representation; a special public defender was being sought; a limited number of lawyers are qualified and willing to represent habeas petitioners as special public defenders; and available lawyers are assigned to petitioners in chronological order, based on the order in which the habeas petitions were filed. Pet'r Mot. Ext. Time of 2/20/2001, at 1-2.
On February 22, 2001, this Court denied the motion for extension of time without prejudice, indicating that the motion could be re-filed but "must contain the nature of the perceived conflict of interest." A second Motion for Extension of Time to File Motion to Appoint Special Public Defender was filed by the Habeas Corpus Unit on March 8, 2001. The second Motion for Extension of Time indicated the same grounds as the first motion, but elaborated the alleged conflict of interest. The second motion claimed that: the Chief of Habeas Corpus Services, Office of the Chief Public Defender, had concluded that "obligations to other clients — and my responsibilities to third parties — may materially limit my representation of this petitioner within the meaning of Rule 1.7(b);" Rule 1.7(b) would be violated because of the "high likelihood that such material limitations would adversely affect my representation;" the attorneys of the Habeas Corpus Unit of the Office of the Chief Public Defender, who are supervised by the Chief of Habeas Corpus Services, were disqualified from representing the petitioner because of imputed conflict of interest under Rule 1.10(a); and under "State v. Martin, 201 Conn. 74,82 (1986) the Court may `rely upon counsel's representation that the possibility of such a conflict does or does not exist'." Pet'r Mot. Ext. Time of 3/8/2001, at 1-2.
In addition to the second Motion for Extension of Time, counsel for the petitioner filed on March 8, 2001 a Motion for Additional Time to Supplement Notice of Transcript Order as well as a Notice of Transcript Order. The Clerk's Office sent notice on April 3, 2001 that a preliminary investigative hearing on the alleged conflict of interest had been scheduled. On April 26, 2001, Legal Counsel for the Office of the Chief Public Defender filed appearances on behalf of both the Chief Public Defender as well as the Chief of Habeas Corpus Services, both of whom would be called as witnesses at the preliminary investigative hearing. After the Court granted the Legal Counsel's request for a continuance, the hearing was conducted before this Court on May 24, 2001 at which testimony was given by Chief Public Defender Gerard A. Smyth, Chief of Habeas Corpus Services Temmy Ann Pieszak, as well as expert witness CT Page 16667 Attorney Ralph Elliot. At the conclusion of the hearing counsel were ordered to file simultaneous briefs.
 DISCUSSION
In this case, Attorney Pieszak, as Chief of the Habeas Corpus Unit, Office of the Chief Public Defender, has indicated that the Habeas Corpus Unit has a conflict of interest that precludes substantive representation. Specifically, Attorney Pieszak has concluded that "obligations to other clients — and . . . responsibilities to third parties — may materially limit . . . representation of this petitioner within the meaning of Rule 1.7(b)." Pet'r Mot. Ext. Time (3/8/2001), at 1. As the respondent correctly points out in his brief, the "Habeas Unit does not represent another client whose interest would be hurt by representation of the Petitioner. There is no other client whose interest would limit the representation of the Petitioner." Resp't Br., at 1. The respondent thus concludes that Rule 1.7 of the Rules of Professional Conduct, the general rule on conflict of interest, "is inapplicable to the present matter." Id. Rule 1.7(b), however, also prevents representation if representation is materially limited "by the lawyer's own interests[.]"
"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, section8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel." State v. Martin, 201 Conn. 74,78, 513 A.2d 116 (1986). "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." Id. (QuotingWood v. Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220
(1981)). Also see Phillips v. Warden, 220 Conn. 112, 132, 595 A.2d 1356
(1991) (3:2 decision, Covello, J. and Hennessy, J. dissenting). "[T]he fundamental principle underlying the right to conflict-free representation . . . is that an attorney owes an overarching duty of undivided loyalty to his client." Id., at 136. "This right requires that the assistance of counsel be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." (Internal quotations omitted.) State v. Martin, supra,201 Conn. 78.
"Moreover, one of the principal safeguards of this right is the rule . . . that a trial court must explore the possibility of conflict when it knows or reasonably should know of a conflict." State v. Martin, supra,201 Conn. 79. Also see Festo v. Luckart, 191 Conn. 622, 628, 469 A.2d 1181
(1983); State v. Cruz, 41 Conn. App. 809, 812, 678 A.2d 506 (1996), cert. den., 239 Conn. 908, 682 A.2d 1008 (1996). "To safeguard a criminal CT Page 16668 defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial judge in a timely manner." State v. Martin, supra, 201 Conn. 82.
 While Holloway v. Arkansas[, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978),] emphasized that it was not transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict, the trial court must be able, and be freely permitted, to rely upon counsel's representation that the possibility of such a conflict does or does not exist. The reliance in such an instance is upon the solemn representation of a fact made by the attorney as an officer of the court. The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case. (Internal citations and quotations omitted.). State v. Martin, supra, 201 Conn. 82.
A trial court is not prevented from "exploring the adequacy of the basis for counsel's representations of conflict of interest." Id., 83. In fact, that is the very purpose of the inquiry: to determine the factual substantiation bolstering the alleged conflict of interest. Thus, "when counsel makes a timely assertion of a conflict of interest, the trial court is under an affirmative obligation to make an adequate inquiry on the record to establish whether there is a conflict of interest." Id.;Also see Festo v. Luckart, supra, 191 Conn. 629.
"Where, however, the defendant claims that his counsel was burdened by an actual conflict of interest, the defendant need not establish actual prejudice. Where there is an actual conflict of interest, prejudice is presumed because counsel has breached the duty of loyalty, perhaps the most basic of counsel's duties." (Internal citations and quotations omitted.) Phillips v. Warden, supra, 220 Conn. 132-3. This presumption is especially warranted given that "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." Walton v. Commissioner of Correction, 57 Conn. App. 511,516, ___ A.2d ___" cert. den., 254 Conn. 913, ___ A.2d ___ (2000).
"The trial court has broad discretionary power to determine whether an attorney should be disqualified for an alleged conflict of interest."State v. Webb, 238 Conn. 389, 417, 680 A.2d 147 (1996); State v.Jennings, 216 Conn. 647, 654, 583 A.2d 915 (1990); State v. Edwards,201 Conn. 125, 138, 513 A.2d 669 (1986); State v. Jones, 180 Conn. 443,448, 429 A.2d 936 (1980), aff'd., 193 Conn. 70, 475 A.2d 1087 (1984). The CT Page 16669 Rules of Professional Conduct's general rule on conflict of interest states in relevant part that:
 A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) The lawyer reasonably believes the representation will not be adversely affected and (2) The client consents after consultation. (Emphasis added.) Rules of Professional Conduct 1.7(b).
The commentary to Rule 1.7 further underscores the importance of loyalty to the client as well as the potential of conflict arising out of the attorney's interests:
 Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. . . . A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved. (Emphasis added.) Commentary "Loyalty to a Client," Rules of Professional Conduct 1.7.
Thus, if a conflict is likely and would result in material interference with an attorney's independent professional judgment and consideration of alternatives or courses of action that reasonably should be pursued, the duty of loyalty between attorney and client is impaired.
The "Other Conflict Situations" commentary section to Rule 1.7 is particularly relevant:
 Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include duration andCT Page 16670 intimacy of the lawyer's relationship with the client
or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict of it does arise. The question is often one of proximity and degree. (Emphasis added.) Commentary to Rules of Professional Conduct Rule 1.7.
The "Other Conflict Situations" commentary section to Rule 1.7 then gives examples of such difficult-to-assess conflicts: a lawyer's representation of multiple parties to a negotiation whose interests are fundamentally antagonistic to each other; a lawyer's preparation of wills for several family members; a lawyer's responsibility to either the fiduciary or the estate or trust, depending on the law of the jurisdiction in question; and the diverging responsibilities a lawyer may have who is both counsel to a corporation or organization and a member of that entity's board of directors. Id. These examples underscore the proximity and degree is the lawyer's relationship to several clients, how close the relationships are, and the level of involvement with each of these potentially conflicting clients.
In the context of one attorney representing multiple defendants, conflict of interest was defined "as when one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." Festo v. Luckart, supra, 191 Conn. 631. "While the right to conflict-free representation typically is implicated in cases involving representation of criminal codefendants by a single attorney, it is equally applicable in other cases where a conflict of interest may impair an attorney's ability to represent his client effectively." (Internal citations omitted.) Phillips v. Warden, supra,220 Conn. 134-5. "[T]he fundamental principle underlying the right to conflict-free representation . . . is that an attorney owes an overarching duty of undivided loyalty to his client. At the core of thesixth amendment guarantee of effective assistance of counsel is loyalty, `perhaps the most basic of counsel's duties'." Id., at 136.
The Connecticut Supreme Court has also "described an attorney's conflict of interest as that which impedes his paramount duty of loyalty to his client." State v. Crespo, supra, 246 Conn. 689. "[A]n attorney may be considered to be laboring under an impaired duty of loyalty, and thereby be subject to conflicting interests, because of interests or factors personal to him that are inconsistent, diverse or otherwise discordant with the interests of his client." Id., 689-90.
 This requirement of loyalty carries with it the CT Page 16671 correlative duty of exercising independent professional judgment on the client's behalf, and both those duties are also reflected in the relevant disciplinary guidelines. . . . Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests. . . . A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own interests. Loyalty is an essential element in the lawyer's relationship to a client; that such loyalty is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests; and that the lawyer's own interests should not be permitted to have adverse effect on representation of a client. (Internal citations and quotations omitted.) Phillips v. Warden, supra, 220 Conn. 137-8.
An attorney's own financial, business, property, or personal interests should not be allowed to negatively or materially impact the exercise of professional judgment on behalf of a client. "These references to a lawyer's interests are not confined, however, to those financial or personal interests that are extrinsic to the case at hand. They may, under appropriate circumstances, include situations where intrinsic situations of the lawyer, when viewed in the context of his client's cause, requires that he withdraw from representing the client because of [an] impermissible risk [of a constitutional violation]." Phillips v. Warden, supra, 220 Conn. 138.[1]
The duty of loyalty requires that an attorney representing a client exercise independent professional judgment. Id., at 137. In Phillips, the Court found that the respondent's argument that there was no conflict of interest was "premised on an unduly cramped notion of when a criminal attorney is laboring under a conflict of interest." Id., at 142. Loyalty to a client is impaired when an attorney is burdened with conflicting interests or responsibilities that prevent a lawyer from considering, recommending or carrying out an appropriate course of action for the client. Id., at 138.
Based on the foregoing, this Court concludes that the facts of this case do not automatically render Rule 1.7 inapplicable. The respondent also argues that "there is a conflict of interest under Rule 1.10 of the CT Page 16672 Rules of Professional Conduct. Rule 1.10 deals with the imputed disqualification of a lawyer. It prohibits a lawyer from representing a client if another member of his firm could not represent the client because of a conflict under Rule 1.7." Resp't Br., at 2. After concluding that "trial counsel and the attorneys of the Habeas Unit . . . are in fact associates" and that "the Public Defender System is actually one office for any purpose. It is one `law firm.';" Id., at 3; the respondent argues that a "conflict of interest exists when a claim has been made against one attorney in an office. Under Rule 1.10. if a conflict exists against one member of the firm, a conflict exists against every member of the firm." Id., at 7. Rule 1.10 addresses imputed conflict of interests. To "impute" means "to attribute (especially a fault or misconduct) to another; charge with; ascribe." WEBSTER'S NEW WORLD DICTIONARY 707 (2nd coll. ed. 1980). As the "Principles of Imputed Disqualification" commentary section of Rule 1.10 clarifies,
 The rule of imputed disqualification . . . gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated.
While this Court agrees with the respondent's contention that if a conflict exists against one member of a firm, that conflict is imputed to all other members of the firm, there must first be a determination that there in fact exists a conflict of interest that is to be imputed. It is precisely such a determination of whether a conflict of interest exists that is being made by this Court. Thus, the respondent's conclusion that the Habeas Unit is under an imputed conflict of interest, without finding an original conflict of interest, is in error.
As indicated above, the respondent contends that "trial counsel and the attorneys of the Habeas Unit . . . are in fact associates" and that "the Public Defender System is actually one office for any purpose. It is one `law firm.' Resp't Br., at 3. The petitioner concurs with this conclusion: "All three witnesses presented by [Legal Counsel for the Office of the Chief Public Defender] agreed that the Division of Public Defender Services which includes the Office of the Chief Public Defender, its specialized units and field offices throughout the state constitute a single firm for purposes of a conflict between attorneys under Rule 1.7(b)." Pet'r Br., at 16. "Attorney Elliot, an expert in the area of ethics, testified that `the entire office of the Chief Public CT Page 16673 Defender, all of the two hundred lawyers, all of the paralegals, all of the secretaries, is structured `as one office'." (Emphasis in original.)Id.
Additional reasons given by the petitioner as to why the Division of Public Defender Services is a single firm is that it "promotes and encourages a collegial environment, provides statewide training, conferences, mentoring and social activities for all of the employees of the Division." Id., 17. "Attorney Elliot testified that considering the "attempt to create camaraderie, collegiality, cooperation', it would be `extraordinarily difficult' for a public defender to attack the integrity and competence of another public defender within the Division.[2] This is especially so because `clients need to have confidence that those people in that office are as competent as private practitioners, because as indigents they really have no choice but to accept them.' Attorney Elliot testified that clients with appointed counsel might have doubts as to the competence of the representation they shall receive in light of the fact that appointed counsel, the prosecution and the judge all work for the state." Id.[3] Attorney Elliot concluded that as he "had heard the testimony . . . [before the habeas court], there seems to be a conscious attempt to view [the public defender's system] as a single office, all two hundred lawyers, . . . at least for purposes of this kind of conflict[.]" Tr. (May 24, 2001), at 95.
Relevant given the arguments made by the Habeas Corpus Unit are the holdings in several cases by this state's Supreme Court regarding whether individual units within entities such as the public defender's system or the state's attorney's system are to be considered as comprising one large firm or are separate firms for purposes of a conflict of interest determination. In State v. Cobb, 251 Conn. 285, 743 A.2d 1 (1999), cert. den., 531 U.S. 811, 121 S.Ct. 106, 148 L.Ed.2d 64 (2000), the defendant had been represented by several public defenders in separate criminal matters. Id., at 349-50. The Supreme Court
 in an unpublished order . . . directed that the case be remanded to the trial court to determine whether a conflict of interest required the disqualification of the defendant's appellate counsel. The state moved to disqualify the public defender litigating the defendant's appeal after the defendant had filed a habeas corpus petition alleging ineffective assistance by his public defenders at trial. One of the defendant's trial attorneys was assigned to the trial services unit in Hartford and the other was a local public defender in Waterbury. On appeal, the defendant was represented by a public defender from the legal CT Page 16674 services unit in New Haven. After our remand, the trial court determined that the Public Defender System is not a single unitary firm and that the Trial Services Unit and the Legal Services Unit are indeed separate firms as defined in the comment to Rule 1.10. (Internal quotation marks omitted.) State v. Webb, 238 Conn. 389, 419, 680 A.2d 147 (1996).
In Webb itself, "one of the defendant's trial attorneys . . . was a public defender assigned to the Hartford-New Britain judicial district at Hartford. The other public defender . . . was assigned to the trial services unit in Hartford. [A third attorney] was a public defender assigned to geographic area number nineteen at Rockville." Id., at 420. The Supreme Court held that "[a]s in Cobb and Jones, we conclude that the three attorneys were not members of a unitary firm for the purposes of imputed disqualification. Each worked in a distinct unit of the public defender system, and there is no suggestion in the record of a professional relationship between the defendant's trial counsel, both of whom worked in Hartford, and [the third attorney], who had been recently hired to work in Rockville." Id.
In State v. Jones, 180 Conn. 443, 451, 429 A.2d 936 (1980), overruled in part by State v. Powell, 186 Conn. 547, 442 A.2d 939 (1982), cert. denied sub nom. Moeller v. Connecticut, 459 U.S. 838, 103 S.Ct. 85,74 L.Ed.2d 80 (1982), the Supreme Court was confronted with a situation where there was "a substantial relationship between [a] criminal prosecution for murder and . . . prior civil litigation." The chief assistant state's attorney in New Haven had a prior attorney-client relationship with the defendant in which the state's attorney "could have received medical information concerning the defendant which the defendant might reasonably assume would be withheld from the state in his criminal prosecution." State v. Jones, supra, 180 Conn. 451. The Supreme Court, in holding that the trial court had erred in denying the defendant's request to disqualify the state's attorney, found that
 [i]n view of the notice given by the defendant that he may rely on a defense of mental disease or defect and the injuries to his head caused by the automobile accident[, which was the subject of the prior civil litigation], there is a substantial relationship between this criminal prosecution for murder and the prior civil litigation. [The state's attorney's] receipt of confidential information is therefore presumed, and his employment as chief assistant state's attorney . . . requires his disqualification[.] Id., 451-2.[4]
CT Page 16675
The defendant in Jones further argued that all prosecutors affiliated with the disqualified attorney's office were themselves disqualified. The claim was based solely on that lawyers should avoid all appearance of impropriety, for in Jones there was "no evidence or even a claim that any other attorney in the state's attorney's office has had a prior professional relationship with [the defendant]." Id., at 452. The cases relied upon by the defendant in State v. Jones, in which "the law firm had procured some advantage in the current litigation by virtue of its access to prior confidential communications between the lawyer and his former client . . . necessitat[ing] the disqualification of the entire firm, . . . were distinguishable from [the facts in Jones because the court's finding . . . reveals no real or apparent advantage to the state's attorney's office by virtue of [the state's attorney's] prior confidential communications with the defendant." Id., at 454-5.
In affirming the trial court's denial of the motion to disqualify all the prosecutors in the office of the disqualified state's attorney, the Supreme Court noted that
 ethical problems cannot be resolved in a vacuum. . . . Although rigid application of the law firm disqualification rule might afford an easy solution, the rule has been subject to severe criticism. It can be argued that withdrawal of the entire law firm, here the entire state's attorney's office, when the slightest chance of betrayal of confidential communications exists might better preserve the integrity of the judicial system. But a rule this broad would result in many unnecessary withdrawals, limit mobility in the legal profession. and restrict the state in the assignment of counsel where no breach of confidentiality has in fact occurred. (Emphasis added.) (Internal citations omitted.) Id., at 455-7.
In this case, there is no evidence that there is a chance of betrayal of confidential communications between the petitioner and his former counsel, nor is there any evidence of a prior professional relationship between any of the Habeas Corpus Unit attorneys and the petitioner's trial attorney. A rule that the Habeas Corpus Unit, Office of the Chief Public Defender, is automatically preempted from representing a petitioner alleging ineffective assistance of counsel against a public defender is, in this Court's opinion, overly broad.
Reliance is also placed on State v. Leecan, 198 Conn. 517, 541-2,504 A.2d 480 (1998), cert. den., 476 U.S. 1184, 106 S.Ct. 2922, 91 CT Page 16676 L.Ed.2d 550 (1986), for the proposition that the Habeas Corpus Unit has an automatic conflict of interest in a habeas corpus case alleging ineffective assistance of counsel by a public defender because such a claim cannot be raised on direct appeal. Mem. in Supp. of Mot., at 18; Tr. (May 24, 2001), at 66. In other words, because an ineffective assistance of counsel claim cannot be raised on direct appeal, a conflict of interest between an attorney in the Habeas Corpus Unit and former trial counsel does not arise until a habeas petition is filed against the latter. This Court finds that the reliance on Leecan is misplaced.
"A claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than in a direct appeal. Section 39-27 of the Practice Book, however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea." (Internal citation omitted.) State v. Gray,63 Conn. App. 151, 161, 772 A.2d 747, cert. denied, 256 Conn. 934, ___ A.2d ___ (2001). Thus, it is possible to raise ineffective assistance of counsel claims on direct appeal, though in very limited circumstances. The basis for the preference of raising ineffective claims in a habeas proceeding instead of on direct appeal, even if there is support for such a claim in the record, is that "ineffective assistance claims of error should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." State v. Leecan, supra, 198 Conn. 542.
"A defendant should not be required to await the outcome of his appeal upon other issues before pursuing his claim of incompetent counsel. If his claim is meritorious, he may often obtain relief in the trial court before his appeal on other issues can be heard, thus mooting such an appeal. An appeal by the state or the defendant from the determination of the incompetency of counsel question may also be joined with a pending appeal from the judgment of conviction, thus allowing, a single resolution on appeal of all the claims of error that have been raised." Id., at 541-42.
Unquestionably, Leecan mandates that ineffective claims should be raised in a habeas corpus petition, though it is possible in very limited circumstances to have an ineffective claim raised on direct appeal. The Habeas Corpus Unit, Office of the Chief Public Defender, argues thatLeecan supports the contention that the mere fact that an ineffective assistance of counsel claim is raised against another public defender automatically results in a conflict of interest. This Court disagrees with the claim that Leecan supports such a per se conflict rule, especially given that all the individual units within the public defender's system are not viewed as comprising one large law firm. StateCT Page 16677v. Cobb, supra, 251 Conn. 350.
Consequently, this Court finds that the Habeas Corpus Unit of the Office of the Chief Public Defender is a separate "law firm" for the purpose of determining whether it operates under a conflict of interest when it represents a petitioner who alleges ineffective assistance of counsel against a public defender assigned to another unit within the public defender's system. There being no evidence that any attorney in the Habeas Corpus Unit has had a prior professional relationship with the petitioner or his former trial counsel, this Court concludes that there is no conflict of interest which prevents the unit from substantively representing the petitioner.
 CONCLUSION
The Chief of the Habeas Corpus Unit has indicated that obligations to other clients and her responsibilities to third parties may materially limit her representation of the petitioner within the meaning of Rule 1.7(b), and that Rule 1.7(b) would be violated because of the high likelihood that such material limitations would adversely affect representation of the petitioner. As a result, the Chief of the Habeas Corpus Unit alleges a conflict of interest, said conflict which also must be imputed to each member of the Habeas Corpus Unit.
There is no evidence which supports the contention that the alleged conflict of interest forecloses alternatives that would otherwise be available to the petitioner. The record does not support the conclusion that there would be any material interference with an attorney's independent professional judgment in considering alternatives or that courses of action that reasonably should be pursued on behalf of the petitioner will be foreclosed. Consequently, there is no credence to the claim that the overarching duty of undivided loyalty owed to the petitioner by an attorney from the Habeas Corpus Unit would somehow be encroached upon.
This Court, after thoroughly exploring the adequacy of the basis for counsel's representations of conflict of interest, concludes that even though the Office of the Chief Public Defender has attempted to view the statewide public defender system as comprising one firm, such a view stands in direct contradiction to Supreme Court precedent. There being no evidence that there is an actual conflict of interest which prevents the Habeas Corpus Unit from representing the petitioner in a substantive manner, the Motion for Extension of Time to File Motion to Appoint Special Public Defender, premised upon such a conflict of interest, is denied. CT Page 16678
DAVID M. BARRY, JUDGE TRIAL REFEREE