## STATE OF CONNECTICUT *v.* LUCY CRUZ
### (15177)

Dupont, C. J., and Spear and Hennessy, Js.

Argued February 27—officially released June 25, 1996

*Elizabeth M. Inkster*, assistant public defender, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom were *James E. Thomas*, state's attorney, and, on the brief, *Warren Maxwell*, senior assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a. The defendant claims that during the probable cause hearing[1] the

---

[1] General Statutes § 54-46a (a) provides: "No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused

court, having been made aware of a possible conflict of interest involving her attorney, breached its duty to inquire about the possible conflict and to elicit a waiver from the defendant of her constitutional right to conflict free representation, due process and a fair trial, and that this alleged breach constituted a structural error in the proceedings that vitiated all subsequent proceedings.[2]

The jury reasonably could have found the following relevant facts. On September 3, 1993, Lucy Cruz shot and killed Gloria Rivera after a brief argument outside their apartment building. The two individuals had lived together as lovers for three years preceding the shooting, and Rivera had recently initiated a break-up of the relationship.

The state prosecuted the defendant on the theory that she intentionally killed Rivera, while the defense argued that the shooting was not intentional, but rather, the result of extreme emotional disturbance stemming from the break-up.

Several eyewitnesses, including Rosa Collado, testified to the shooting. Collado testified that the defendant appeared "fine" after the shooting. Another witness testified that before the shooting, the defendant looked "serious," that he had never seen her look that way before, and that he tried to joke with her, but she did not respond. A third witness stated that the defendant

person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause."

[2] The case, originally on the Supreme Court's docket, was subsequently transferred to this court by the Supreme Court. See Practice Book § 4023. A second claim on appeal urged the Supreme Court to overrule its decision in *State* v. *Ortiz*, 217 Conn. 648, 588 A.2d 127 (1991). Because we may not disturb the *Ortiz* holding, we do not address this claim. *Martin* v. *Plainville*, 40 Conn. App. 179, 182, 669 A.2d 1241 (1996). Both the state and the defendant agree that we should not rule on the claim.

looked angry. The defendant provided expert testimony in an attempt to establish that she suffered from extreme emotional disturbance at the time of the shooting, and the state rebutted with its own expert witness. Additional relevant facts are set forth in the discussion of the issues.

The defendant claims that her constitutional right of conflict free representation was violated during her probable cause hearing, which constituted a structural error that vitiated all subsequent proceedings. See *Arizona* v. *Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

The sixth amendment to the United States constitution,[3] as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution[4] both guarantee a defendant the right to effective assistance of counsel in a criminal proceeding. *Powell* v. *Alabama*, 287 U.S. 45, 71, 53 S. Ct. 55, 77 L. Ed. 2d 158 (1932); *State* v. *Mason*, 186 Conn. 574, 577, 442 A.2d 1335 (1982). "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood* v. *Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981). This right applies not only to the trial itself, but to any critical stage of a criminal proceeding. *Holloway* v. *Arkansas*, 435 U.S. 475, 489, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), citing *White* v. *Maryland*, 373 U.S. 59, 83 S. Ct. 1050, 10 L. Ed. 2d 193 (1963); *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Hamilton* v. *Alabama*, 368 U.S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114

[3] The sixth amendment of the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

[4] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . . "

(1961). "Moreover, one of the principal safeguards of this right is the rule announced by this court that '[a trial] court must explore the possibility of a conflict . . . when it knows or reasonably should know of a conflict . . . .' " *State* v. *Martin*, 201 Conn. 74, 79, 513 A.2d 116 (1986), quoting *Festo* v. *Luckart*, 191 Conn. 622, 629, 469 A.2d 1181 (1983). Because this right to conflict free representation applies to all critical stages of a criminal proceeding, the duty of a court to safeguard this right applies equally to all such stages, which, by virtue of General Statutes § 54-46a (a), include a hearing in probable cause.

Cases involving conflicts of interest usually arise in the context of representation of multiple codefendants by one attorney where "the attorney adduces evidence or advances arguments on behalf of one defendant that are damaging to the interests of the other defendant." *Phillips* v. *Warden*, 220 Conn. 112, 135–36, 595 A.2d 1356 (1991). A conflict of interest also arises if trial counsel simultaneously represents the defendant and another individual associated with the incident and that representation inhibits counsel's ability to represent the defendant. *State* v. *Martin*, supra, 201 Conn. 80–81. The defendant here, however, urges us to conclude that the potential for conflict of interest exists if a state's witness was represented previously in an unrelated matter by the defendant's attorney and that such potential conflict requires the court's inquiry and a waiver from the defendant of her constitutional right to conflict free representation.

At the probable cause hearing, the defendant's attorney informed the court that he had represented one of the state's witnesses on a prior occasion. Further discussion ensued and revealed that the prior representation involved a criminal narcotics charge, more than five years prior to the killing in this case. The defendant's attorney indicated that the representation had no

relevancy to the present case.[5] "While *Holloway* v. *Arkansas*, supra, [435 U.S. 486], emphasized that it was

[5] The following discussion took place involving the court, Attorney William Gerace, the defendant's trial counsel, and Attorney Warren Maxwell, the assistant state's attorney.

"Mr. Gerace: Your Honor, before this witness testifies, I did represent this lady on a narcotics case. I don't know when. I don't—I just recognize her. And there is some impeachment. There's a felony conviction for narcotics.

"Mr. Maxwell: Possession. That's correct, Judge.

"Mr. Gerace: And I don't know how the court would like to handle that.

"Mr. Maxwell: I don't see any problem.

"Mr. Gerace: Would the court indulge counsel by asking her the impeachment question, so that I don't have to do it?

"Mr. Maxwell: Well, I'll ask her.

"Mr. Gerace: Okay. Fine. . . .

"Mr. Gerace: Judge, before the questioning, I just would like to make another matter a part of the record. I did see the name, Rosa Collado, on the police reports. I—it didn't jive—jog my memory, Your Honor. I just saw the lady in the foyer. She said hello to me. I didn't know she was in fact this witness. And then, when Mr. Maxwell just showed me the conviction, I just now realized that this is the same person that I've represented. So, it's a surprise to me that she is that same person. That's what I'm trying to say. . . .

"The Court: Well, I understand Mr. Gerace is going to want to be able to cross-examine her?

"Mr. Gerace: No. I don't think so, Judge.

"The Court: Oh.

"Mr. Gerace: I may, but only—only—I didn't want to ask her the impeachment question because I was counsel.

"The Court: Right.

"Mr. Gerace: But, as to general cross-examination, I don't think there's a problem. I know I haven't seen her since then. . . .

"Mr. Gerace: Okay. I just—I just represented to the court, I haven't seen, or spoken to her, since.

"The Court: Well—

"Mr. Gerace: And if the state's not uncomfortable with me cross-examining her, that's fine.

"The Court: I think [the witness] should be asked one further question, that you will be cross-examining her.

"Mr. Gerace: Okay. Fine.

"The Court: And that, is she willing to have you cross-examine her with the knowledge of what she had indicated to you previously.

"Mr. Gerace: I don't think that's going to be relevant, Judge.

"The Court: It won't be?

"Mr. Gerace: Now that the conviction is in, I'm not going to ask any collateral—

not 'transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict,' the trial court 'must be able, and be freely permitted, to rely upon counsel's representation that the possibility of such a conflict does or does not exist.' *Kaplan* v. *United States*, 375 F.2d 895, 897 (9th Cir.), cert. denied, 389 U.S. 839, 88 S. Ct. 67, 19 L. Ed. 2d. 103 (1967); *Willis* v. *United States*, 614 F.2d 1200, 1206 (9th Cir. 1980). The reliance in such an instance is upon 'the solemn representation of a fact made by [the] attorney as an officer of the court.' *Kaplan* v. *United States*, supra [897]." *State* v. *Martin*, supra, 201 Conn. 82. The defendant's attorney represented to the court that this prior representation had no relevancy to the trial, that he had not seen or spoken to the witness since the prior representation, and that he was not going to ask any collateral questions regarding this prior conviction. Although the defendant was reluctant to place this conviction into evidence, he was assured that the conviction would be introduced and that, therefore, the jury would be aware of it in its assessment of the witness' credibility. Defense counsel gave no indication to the court that a conflict prevented him from offering a viable defense or prevented a line of inquiry of the witness or prevented a full cross-examination of the witness.[6] Cf. id., 77 n.3.

The defendant argues that, on the basis of these facts, the court should have elicited a knowing and intelligent waiver from the defendant of her constitutional right to conflict free representation before proceeding. The scope of a court's inquiry, or the necessity for such inquiry, however, depends on the circumstances, and

---

"The Court: In other words, this is as far as the impeachment will go?
"Mr. Gerace: That's fine. Yes."

[6] Any claim that counsel's zealousness in cross-examination of the witness was diluted because of his prior representation is not reviewable in this direct appeal.

a court need not necessarily elicit a waiver. Id., 82. The defendant relies on *Martin*, as a factual illustration of a conflict of interest. Its facts, however, are distinguishable from those of the present case because the attorney in that case made a motion for a mistrial and represented to the court that a conflict of interest did exist because he was *currently* representing an individual whose name was mentioned by a witness at trial. Id., 77 n.3. The trial court not only refused to conduct an inquiry into the possible conflict, but did not even permit counsel ample opportunity to state for the record the basis of his asserted conflict of interest. Id. In the present case, the court and counsel discussed the issue, counsel was not currently representing the witness, the representation was five years earlier, and counsel did not believe his past representation of the witness would conflict with his present representation of the defendant.[7]

The defendant also cites *People* v. *Pinkins*, 272 Cal. Rptr. 100 (Cal. App. 1990) (not officially published by

___

[7] The defendant cites cases from other jurisdictions to support a finding of conflict of interest, but the facts of those cases are also distinguishable. *In re Darr*, 143 Cal. App. 3d 500, 514, 191 Cal. Rptr. 882 (1983) (trial court failed to make inquiry after receiving information counsel was simultaneously representing defendant and state's witness); *State* v. *Carmouche*, 508 So. 2d 792, 795 (La. 1987) (concurrent representation of defendant and state's witness who was to provide inculpatory statements made by defendant to witness while they shared jail cell, where witness had unconcluded plea bargain with state for charges in unrelated case); *Gee* v. *State*, 93 Md. App. 240, 242–43, 611 A.2d 1081 (1992) (joint representation of codefendants where counsel admitted conflict result of plea bargain arrangement made for one defendant that would implicate other defendant); *People* v. *Krausz*, 84 N.Y.2d 953, 954, 644 N.E.2d 1377, 620 N.Y.S.2d 821 (1994) (concurrent representation of defendant, charged with sexual abuse, and witness, who was one victim's father, where attorney was representing witness in unrelated civil case and stated that conflict of interest existed and, as result of conflict, entered into agreement with state to not call victim's father as witness); *In Interest of Saladin*, 359 Pa. Super. 326, 332–33, 518 A.2d 1258 (1986) (concurrent representation of defendant, charged with robbery, and victim of alleged robbery, where defense counsel admitted that conflict

order of the California Supreme Court, November 20, 1990), to support her view that a conflict potentially existed. In that case, the court found that a *possible* conflict of interest resulted where defense counsel, in a prior unrelated case, had represented a state's witness, who was also the victim of the crime alleged. The court stated that "[t]he fact that the offenses of the former client who is now a witness are unrelated and concluded at the time of trial does not negate the possibility of a conflict of interest." Id., 107. *Pinkins*, however, is not persuasive because the court made no attempt to analyze the quoted statement in view of the facts. No additional facts are given, such as when the representation of the witness occurred or if there was any contact between counsel and the witness during the interval between representation of the witness and the trial of the defendant or if any representations of counsel had been made to the court. The witness in *Pinkins* was a victim of the crime of which the defendant was accused and, therefore, occupied a crucial status in the outcome of the defendant's trial, unlike the witness in the present case who was one of several witnesses testifying as to the emotional condition of the defendant at the time of the crime, and whose testimony was cumulative.

On the facts of this case, neither an actual nor potential conflict of interest existed, and it was therefore unnecessary for the court to inquire further or to obtain a waiver from the defendant. The defendant was not deprived of her constitutional rights to conflict free representation, due process and a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

existed and refused to cross-examine victim because his personal knowledge of victim resulted from his representation of victim).