******************************************************
The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

TINESSE TILUS *v.* COMMISSIONER OF CORRECTION
(AC 39275)

Lavine, Mullins and Beach, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming that his right to conflict free counsel was violated and that his trial counsel provided ineffective assistance. The petitioner had been convicted of the crime of robbery in the first degree in connection with his alleged conduct in robbing a store with three accomplices, including B. During pretrial proceedings, both the petitioner and B were initially represented by the same public defender, S, who continued to represent the petitioner only during his criminal trial following an inquiry by the trial court concerning a potential conflict of interest. On direct appeal, the petitioner claimed that S's joint representation of the petitioner and B in the pretrial phase presented a conflict of interest and that, because the trial court's inquiry into the matter was not adequate to apprise him of the risks of continued representation by S, there was no valid waiver of the potential conflict, in violation of his constitutional right to conflict free representation. This court rejected the petitioner's claim and affirmed the judgment of the trial court. The Supreme Court dismissed the petitioner's appeal from this court's judgment. Thereafter, the habeas court rendered judgment denying the habeas petition, and the petitioner, on the granting of certification, appealed to this court from the habeas court's judgment. *Held*:

1. The petitioner could not prevail on his claim that his constitutional right to conflict free counsel was violated by S's representation of both the petitioner and B prior to the petitioner's criminal trial: the habeas court properly determined that no actual conflict of interest existed and that the petitioner had failed to prove a single, specific instance in which S's representation of him was compromised by the alleged conflict, as the record showed that both B and the petitioner told S the same version of events, there was no evidence that the petitioner ever said or did anything to suggest that he had information that would implicate B or that could have been used to secure for the petitioner a favorable plea deal from the state, and there was no impairment or compromise of the petitioner's interests for the benefit of B; moreover, the habeas court properly determined that the petitioner had failed to prove that he was prejudiced by any potential conflict created by the dual representation, as there was no evidence that the petitioner sought a plea agreement or knew anything that S could have used to negotiate an agreement for him, and it was not likely that the state would have benefited from the petitioner's cooperation.

2. The habeas court properly determined that the petitioner was not denied his constitutional right to the effective assistance of trial counsel, because, although S's representation was deficient in that he failed to conduct a timely investigation into the charges against the petitioner, the petitioner was not prejudiced thereby; the habeas court correctly concluded that the failure to call A as a defense witness did not undermine the jury's verdict, as A's testimony would not have undermined the testimony of one of the state's witnesses, and the petitioner failed to demonstrate that he was prejudiced by S's introduction of J's testimony, because, even though J testified on cross-examination that he had a criminal record, his testimony on direct examination was consistent with the petitioner's theory of the crime.

Argued May 17—officially released August 8, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, geographical area number nineteen, and tried to the court, *Bright, J.*; judgment denying the petition, from which the petitioner, on the granting of certifica-

tion, appealed to this court. *Affirmed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Emily D. Trudeau*, assistant state's attorney, with whom, on the brief, was *John. C. Smriga*, state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Tinesse Tilus, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly concluded that his state and federal constitutional rights to (1) conflict free counsel and (2) the effective assistance of counsel were not violated. We affirm the judgment of the habeas court.

In 2012, following a jury trial, the petitioner was convicted of one count of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (2), for his participation in the robbery of the Caribbean-American Grocery and Deli in Bridgeport on December 28, 2011. *State* v. *Tilus*, 157 Conn. App. 453, 455, 117 A.3d 920 (2015), appeal dismissed, 323 Conn. 784, 151 A.3d 382 (2016). The trial court, *Kavanewsky, J.*, sentenced the petitioner to twelve years of incarceration, execution suspended after eight years, followed by four years of probation. Id., 460. The petitioner's conviction was affirmed by this court on direct appeal. Id., 489. On July 8, 2015, our Supreme Court granted the petitioner certification to appeal limited, in part, to the following issue: "Did the Appellate Court properly determine that the trial court secured a valid waiver of the [petitioner's] constitutional right to conflict free representation?" *State* v. *Tilus*, 317 Conn. 915, 117 A.3d 854 (2015). The Supreme Court subsequently dismissed the petitioner's direct appeal from the Appellate Court's judgment. *State* v. *Tilus*, supra, 323 Conn. 784.[1]

The following facts, as set forth by this court in resolving the petitioner's direct appeal, provide the context for the claims he raises in the present appeal.[2] At approximately 8 p.m. on December 28, 2011, Rene Aldof[3] and Ramon Tavares were tending Aldof's store on Wood Avenue in Bridgeport, "when four men entered the store. One of the men was the [petitioner], whom Aldof recognized as 'Tinesse,' a regular customer of the store. Aldof also recognized a second man, Jean Barjon, but did not recognize either of the two other men. One of the unknown men pulled out a handgun and demanded that Aldof give him the money, while the other three men, including the [petitioner], 'encased' him in an effort to prevent his escape. Aldof was able to push past the men and exit the store, pursued by one of the men, who unsuccessfully attempted to restrain him by grabbing his coat. Aldof ran into a nearby laundromat, where he held the door shut to prevent his pursuer from coming in behind him." *State* v. *Tilus*, supra, 157 Conn. App. 455–56.

Tavares was stationed in a plexiglass booth with the cash register and remained there after Aldof left the store. Id., 456. A man pointing a gun at Tavares approached the booth and ordered him to open the

door. Id. The man entered the booth when Tavares opened the door and turned Tavares to face the wall, held the gun to his head, and took Tavares' cell phone, wallet and the money in the cash register. Id.

Outside, Bridgeport Police Officer Elizabeth Santora was driving her police cruiser on Wood Avenue when Aldof exited the laundromat and flagged her down. Id. Aldof told Santora that he had been robbed at gunpoint and pointed to one of his assailants who was walking down Wood Avenue. Id., 456–57. Santora followed the suspect and saw him stop next to several trash cans on Sherwood Avenue. Id., 457. She exited her police cruiser, ordered the suspect to stop, apprehended him, and pulled him toward her cruiser. Id.

"As Santora approached the cruiser with the suspect in tow, she observed a white Nissan Altima that had been parked on Sherwood Avenue begin 'pulling off' into the street. Aldof, then positioned on the corner of Wood and Sherwood Avenues, told Santora that the three men in the Altima had also been involved in the robbery. Santora flagged down the vehicle and told its driver to stop the car and give her the keys. The driver obeyed. The first suspect and the three men in the Altima were detained for questioning. The [four] men were later identified as Guillatemps Jean-Philippe, Jean Louis, Barjon, and the [petitioner]. Aldof confirmed that the detainees were the same four men who had robbed his store."[4] Id.

The petitioner was arrested and charged with conspiracy to commit robbery in the first degree and robbery in the first degree. Id., 458. He pleaded not guilty and testified at trial that on the night of the robbery, "his friend, Barjon, had come to his house at about 7 p.m. and asked him if he would like to take a ride to New Haven. When he agreed to do so, he got in Barjon's car, where Jean-Philippe and another man he did not know were seated in the rear passenger seat. The [petitioner] was told that Barjon had agreed to drive the two men to the train station in New Haven. Instead, however, Barjon drove to Aldof's store and parked his car on the corner of Wood and Sherwood Avenues. The [petitioner] testified that once they arrived at the store, Jean-Philippe, 'with no mention, nothing,' got out of the car and entered the store. The [petitioner] and the other two men remained in the parked car . . . ." Id., 458–59.

The following undisputed procedural history is relevant to the present appeal. At his arraignment on December 29, 2011, the petitioner was represented by a public defender. Id., 460–61. Barjon also was arraigned that day, and he, too, was represented by a public defender. Id., 461. On January 31, 2012, Eroll Skyers, an attorney, filed an appearance on behalf of the petitioner and Barjon. Id. On February 7, 2012, the petitioner entered a plea of not guilty before the court, *Devlin, J.* Id. Skyers informed Judge Devlin that he represented

both the petitioner and Barjon. Id. On April 9, 2012, the petitioner and Skyers appeared before Judge Devlin. Id. The petitioner rejected the state's plea offer, and the case was placed on the trial list. Id.

On October 2, 2012, Skyers and Barjon appeared before Judge Devlin. Id. Skyers represented to the court that Barjon intended to plead guilty under the *Alford* doctrine[5] to the charge of conspiracy to commit robbery in the first degree. Id. "Barjon failed his plea canvass, however, and thus the court vacated his guilty plea. Because, at that time, it was clear that both Barjon and the [petitioner] intended to proceed to trial, [Judge Devlin] raised with Skyers the potential conflict of interest presented by his continued representation of both men. In this regard, the court focused initially on problems associated with Skyers' continued representation of Barjon. Skyers responded by stating for the record that when Barjon and the [petitioner] first came to him seeking joint representation, he had informed them that there could be a potential conflict if both cases proceeded to trial. Although both men persisted in their desire to have him represent them, they agreed that Barjon would retain other counsel if his case was not resolved by entering a guilty plea." (Footnote omitted.) Id., 461–62. The prosecutor questioned whether, given the circumstances, Skyers' continued representation of the petitioner was advisable and identified scenarios that presented a potential conflict of interest. Id., 462. Judge Devlin asked Skyers whether he had discussed the matter with the petitioner. Id. The petitioner was in the courtroom and came forward to answer questions from Judge Devlin. Id. The court explained the attorney-client privilege to the petitioner and potential conflict that could arise as a result of Skyers' having represented both the petitioner and Barjon. Id., 463. The following colloquy occurred.

"The Court: So . . . I don't know what Mr. Barjon [is] going to do. I assume he's going to hire his own lawyer, and whatever happens with that case, happens with that case. I'm more concerned with yours because I think I'm going to let Mr. Skyers out of Mr. Barjon's case. But with respect to you, do you still wish to have Mr. Skyers as your lawyer under those circumstances?

"[The Petitioner]: Yes.

"The Court: Would you like to consult with another lawyer, a different lawyer about this, you know, before we go forward with your case?

"[The Petitioner]: No. . . .

"The Court: Okay. All right. And, Attorney Skyers, from your point of view, have I correctly framed the issue as far as—is there more that should be put on the record here?

"[Skyers]: Absolutely have, Your Honor. Yes." (Internal quotation marks omitted.) Id., 464.

On direct appeal, the petitioner claimed that Judge Devlin's "failure to secure a valid waiver violated his constitutional right to conflict free representation." Id., 460. He argued that "Skyers' joint representation of [him] and Barjon in the pretrial phase of the proceedings gave rise to a conflict of interest which jeopardized the [petitioner's] sixth and fourteenth amendment right to counsel. He further argue[d] that [Judge Devlin's] inquiry into the matter was not adequate to apprise him of the risks of continued representation by Skyers and, thus, no valid waiver was obtained." Id., 464. This court disagreed; id., 460; stating that "the record shows that the court explored the potential conflict of interest when the issue was raised by the prosecutor. The court heard from Skyers and the [petitioner]. Skyers represented to the court that he had discussed the potential conflict of interest with the [petitioner]. The court then informed the [petitioner] of the risks attendant to Skyers' representation of him, namely, Skyers' continuing obligations to Barjon and the ethical barrier to using any information that he had acquired as a result of representing Barjon. The [petitioner] confirmed that he was aware of Skyers' obligations to Barjon, and he expressed his desire to proceed with his retained counsel." Id., 467–68.

This court observed that "[i]n any case involving a possible conflict of interest, the court must be mindful of the defendant's constitutional right to the counsel of his choice . . . when making a determination as to the soundness of the defendant's determination to move forward with his present counsel despite the potential risks. [O]ur chosen system of criminal justice is built on a truly equal and adversarial presentation of the case, and upon the trust that can exist only when counsel is independent of the [g]overnment. Without the right, reasonably exercised, to counsel of choice, the effectiveness of that system is imperiled." (Citation omitted; internal quotation marks omitted.) Id., 471–72.

This court concluded that the petitioner "persisted in his desire to proceed to trial with the assistance of [Skyers,] his chosen counsel. In light of the fact that the only anticipated impediment to Skyers' continued representation of the [petitioner] was the possibility that Barjon would choose to testify on the [petitioner's] behalf, which the court correctly deemed unlikely given Barjon's decision to proceed to trial, it properly deferred to the [petitioner's] expressed desire to proceed, notwithstanding the potential conflict." Id., 472. This court rejected the petitioner's remaining claims and affirmed the petitioner's judgment of conviction. Id., 489. The petitioner filed a petition for certification to appeal, which was granted.[6]

While his direct appeal was pending in this court, the self-represented petitioner filed a petition for a writ of habeas corpus in January, 2014. On March 19, 2015, the

petitioner's appointed habeas counsel filed an amended petition for a writ of habeas corpus, alleging that the petitioner's right to conflict free counsel was violated (count one) and that he received ineffective assistance of trial counsel (count two). The respondent, Commissioner of Correction, denied the material allegations of the amended petition and asserted a special defense that count one of the petition was not ripe for adjudication, as the claim regarding the claim of waiver as to conflict free counsel was still pending and therefore not ripe for adjudication. In the alternative, the respondent alleged that once this court had adjudicated the waiver claim, the issue would be res judicata and barred from further litigation. The petitioner replied to the respondent's return, alleging that count one was ripe pursuant to the prudential ripeness doctrine, that he had suffered actual injury due to his trial counsel's conflict of interest, and that his claim was not contingent on this court's resolution of his direct appeal. Moreover, the petitioner alleged that even if this court concluded that count one required factual development, the claim was not barred by the doctrine of res judicata.

This court affirmed the petitioner's conviction on May 26, 2015, concluding in relevant part that Judge Devlin did not violate the petitioner's constitutional right to conflict free counsel by failing to secure a valid waiver of that right. Id., 460. Our Supreme Court granted certification to appeal. The parties appeared before the habeas court for trial on July 20 and 21, 2015. The habeas court asked the parties to brief the impact of the pending certified appeal on the petitioner's claim of conflict free counsel.

The habeas court issued a memorandum of decision on January 11, 2016, in which it concluded that the doctrine of prudential ripeness warranted dismissal of count one while the question of whether the petitioner validly had waived his right to conflict free representation was pending in our Supreme Court.[7] With respect to count two, the habeas court found that Skyers' representation was deficient in that he failed to timely and adequately investigate the charges against the petitioner. The court concluded, however, that the petitioner failed to prove that he was prejudiced by Skyers' deficient performance. See *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (to prevail, deficient performance must result in prejudice). The court dismissed without prejudice count one of the amended petition and denied the claims in count two.

On January 15, 2016, the petitioner filed a motion to reargue the habeas court's decision to dismiss count one on the ground of prudential ripeness. The habeas court granted the motion to reargue, and the parties appeared before the court for further argument on February 23, 2016. As a consequence of the parties' arguments,[8] on May 9, 2016, the court issued an amended

memorandum of decision in which it denied count one, after it concluded that the petitioner failed to prove that any potential conflict created by Skyers' having represented both the petitioner and Barjon was prejudicial to him.[9] Thereafter, the court granted the petitioner's petition for certification to appeal from the denial of his petition for a writ of habeas corpus. The petitioner appealed to this court. Additional facts will be set forth as needed.

I

The petitioner claims that his constitutional right to conflict free counsel, as provided by the sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the constitution of Connecticut, was violated by Skyers' having represented both the petitioner and Barjon prior to the petitioner's criminal trial. We disagree.

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel. . . . Where a constitutional right to counsel exists, our [s]ixth [a]mendment cases hold that there is a correlative right to representation that is free from conflicts of interest." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 685, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

Conflicts of interest usually arise when counsel undertakes to represent multiple codefendants "where the attorney adduces evidence or advances arguments on behalf of one defendant that are damaging to the interests of the other defendant." (Internal quotation marks omitted.) *State* v. *Cruz*, 41 Conn. App. 809, 812, 678 A.2d 506, cert. denied, 239 Conn. 908, 682 A.2d 1008 (1996). "A conflict of interest also arises if trial counsel simultaneously represents the defendant and another individual associated with the incident and that representation inhibits counsel's ability to represent the defendant." Id.

"Whether the circumstances of pretrial counsel's representation, as found by the habeas court, amount to an actual conflict of interest is a question of law of which our review is plenary." *Shefelbine* v. *Commissioner of Correction*, 150 Conn. App. 182, 193, 90 A.3d 987 (2014).

In count one of his amended petition for a writ of habeas corpus, the petitioner alleged, in relevant part, that Skyers simultaneously represented Barjon and him for approximately ten months between January, 2012, and October, 2012. The charges against the petitioner and Barjon arose from a single incident in which they allegedly were both involved, and therefore the petition-

er's case and Barjon's case were factually related. The petitioner also alleged that Skyers had an actual conflict of interest that adversely affected his representation of the petitioner because Skyers made no attempt to negotiate a plea offer that would have allowed the petitioner to receive a favorable sentence in his case in exchange for his testifying against Barjon. At the hearing on his motion to reargue, the petitioner emphasized that his claim centered on how Skyers' alleged conflict of interest negatively impeded his ability to negotiate a plea agreement in exchange for a favorable disposition of the charges against him.[10]

The habeas court found the following facts relevant to the adjudication of the petitioner's claim. From his first meeting with Skyers through his criminal trial, the petitioner's version of the events that took place on December 28, 2011, remained unchanged. The petitioner told Skyers that he knew Barjon and merely agreed to take a ride with Barjon, who was driving the other two men to the train station in New Haven. He did not know the other men in the car when Barjon picked him up. Instead of going to the train station, Barjon drove to Aldof's store and parked. The petitioner and Barjon remained in Barjon's car when Jean-Philippe got out of the car and went into the store. The petitioner did not know of a plan to rob the store or Aldof. The petitioner stated to Skyers that Barjon would corroborate his version of the events and was willing to sign a statement consistent with what the petitioner had told Skyers.

Two or three weeks after the petitioner had retained him, Skyers met with Barjon, who confirmed the petitioner's version of events. Skyers believed that both the petitioner and Barjon were in the same position and agreed to represent Barjon as well. Although he intended to have the petitioner and Barjon sign waivers of any potential conflicts, he failed to do so. The petitioner and Barjon knew that Skyers was representing them simultaneously.

Before the petitioner's case went to trial, Barjon agreed to plead guilty under the *Alford* doctrine. See footnote 4 of this opinion. Although he disputed the state's version of his involvement in the underlying crime, Barjon was willing to accept legal responsibility for his part in the robbery and to testify at the petitioner's trial that the petitioner was not involved in the robbery. When it came time for Barjon to enter his guilty plea, however, he changed his mind. Skyers withdrew from representing Barjon. Judge Devlin then canvassed the petitioner about the fact that Skyers may have a conflict in representing him at trial because he could not be adverse to Barjon either in questioning or by using confidential information Skyers had received from Barjon.

"In a case of a claimed conflict of interest . . . in

order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an *actual conflict of interest* adversely affected his lawyer's performance. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . Accordingly, an ineffectiveness claim predicated on an actual conflict of interest is unlike other ineffectiveness claims in that the petitioner need not establish actual prejudice. . . .

"*An actual conflict of interest is more than a theoretical conflict.* The United States Supreme Court has cautioned that the possibility of conflict is insufficient to impugn a criminal conviction. . . . A conflict is merely a potential conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future. . . . To demonstrate an actual conflict of interest, the petitioner must be able to *point to specific instances in the record which suggest impairment or compromise of his interests for the benefit of another party.* . . . A mere theoretical division of loyalties is not enough. . . . If a petitioner fails to meet that standard, for example, where only a potential conflict of interest has been established, prejudice will not be presumed and the familiar *Strickland* prongs will apply." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Anderson v. Commissioner of Correction*, 127 Conn. App. 538, 549–50, 15 A.3d 658 (2011), aff'd, 308 Conn. 456, 64 A.3d 325 (2013).

In the present case, the habeas court determined that there was no actual conflict of interest between the petitioner and Barjon.[11] The court found that both Barjon and the petitioner told Skyers the same version of events, i.e., that they remained in the car and did not go into the store, and that they had nothing to do with the robbery. The court also found that there was no evidence that the petitioner ever said or did anything to suggest that he had information that would implicate Barjon, which might be used to secure a favorable plea deal from the state. The court found it ironic that it was Barjon who agreed to implicate himself and to plead guilty so that he could then testify in support of the petitioner's defense. Even at the time of his unsuccessful *Alford* plea, Barjon insisted that he and the petitioner never went into the store, but remained in the car. Before Skyers withdrew from representing Barjon, he had negotiated a plea for Barjon that would have required him to plead guilty to one count of conspiracy to commit robbery in the first degree, and after pleading guilty, to assist in the petitioner's defense. There was no impairment or compromise of the peti-

tioner's interests for the benefit of Barjon or any of the other codefendants.

The habeas court found that the petitioner had failed to prove a single, specific instance in which Skyers' representation of him was compromised by the alleged conflict. The petitioner's hypotheses of what might have happened in plea negotiations had Skyers not also represented Barjon are theoretical and speculative. At most, the petitioner demonstrated that Skyers had a potential conflict of interest and, therefore, the petitioner had to meet both prongs of *Strickland* to prevail. "To prevail on a claim of ineffective assistance of counsel, a habeas petitioner generally must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. See *Strickland* v. *Washington*, [supra, 466 U.S. 687]." *Ortiz* v. *Commissioner of Correction*, 92 Conn. App. 242, 244, 884 A.2d 441, cert. denied, 276 Conn. 931, 889 A.2d 817 (2005).

The habeas court did not address the performance prong of *Strickland* because the petitioner failed to prove any prejudice due to a potential conflict of interest. The court found no evidence that the petitioner was ever interested in a plea agreement. Moreover, the evidence established that it is likely that the state would have seen little value in any cooperation from the petitioner. Aldof told the police, and later testified, that four men entered the store and participated in the robbery. He specifically identified the petitioner, whom he knew, as being in the store and part of the robbery. The petitioner's version of events, in which he remained in the car while Jean-Philippe went into the store, was inconsistent with Aldof's version, and would have been of little use to the state in a trial against Barjon. The only testimony that the petitioner could have given that would have been of use to the state was testimony that corroborated Aldof's, but the petitioner was never willing to incriminate himself. The court also found that the petitioner's story of events never changed from when he was arrested, to his criminal trial, to his habeas trial. There was no evidence that the petitioner knew anything that Skyers could have used to negotiate a favorable plea agreement for him. The habeas court, therefore, concluded that the petitioner failed to prove that any potential conflict created by Skyers' joint representation of the petitioner and Barjon prejudiced him.[12]

On the basis of our review of the briefs of the parties and their oral arguments in this court, we conclude that the habeas court properly determined, in a detailed and well reasoned decision, that no actual conflict of interest between the petitioner and Barjon existed and that the petitioner had failed to prove that he was prejudiced by any potential conflict created by Skyers' joint representation of him and Barjon.

II

The petitioner's second claim is that the habeas court improperly determined that his constitutional right to the effective assistance of counsel pursuant to the sixth and fourteenth amendments to the federal constitution and article first, §§ 8 and 9 of the constitution of Connecticut, was not violated. We do not agree.

"In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]." (Citation omitted; internal quotation marks omitted.) *Mukhtaar* v. *Commissioner of Correction*, 158 Conn. App. 431, 437, 119 A.3d 607 (2015). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action must be considered sound trial strategy." (Internal quotation marks omitted.) Id., 438.

In his amended petition for a writ of habeas corpus, the petitioner alleged ten ways in which Skyers' representation was deficient. The habeas court, however, found that the petitioner abandoned five of them by failing to brief them and by presenting little or no evidence as to them.[13] Consequently, the habeas court addressed only the claims alleging that Skyers' representation was deficient in that he failed to conduct an adequate and timely investigation, failed to present evidence that a firearm recovered near the scene of the robbery was not connected to the petitioner and his codefendants, failed to present evidence that the amount of money recovered from the petitioner and his codefendants was inconsistent with the amount of money alleged to have been taken,[14] presented the testimony of Jean-Philippe, which he knew, or should have known, would be damaging to the petitioner's defense, and failed to present the testimony of Margarita Azcalt. The habeas court grouped the petitioner's claims for purposes of analysis.

The petitioner alleged that Skyers' representation was deficient because he failed to conduct a timely investigation, which resulted in Skyers' (1) failing to have Azcalt testify for the defense and (2) having Jean-Philippe testify for the defense. The court agreed that Skyers' representation was deficient for failing to conduct a timely investigation, but that the petitioner was not prejudiced by Skyers' deficient performance.

A

The habeas court made the following additional find-

ings of fact. The petitioner was arrested on or about December 28, 2011, and after posting bond, met with Skyers on or about December 31, 2011. The petitioner then spoke with Barjon, a friend and codefendant, who was willing to speak with Skyers and provide a supporting statement for the petitioner. As discussed previously, Skyers also undertook to represent Barjon. On the basis of what the petitioner and Barjon told him, Skyers viewed their defenses as the same and not to be in conflict. In part because Barjon was willing to give a statement on the petitioner's behalf, Skyers negotiated a plea arrangement for Barjon. When Barjon and Skyers appeared before Judge Devlin, Barjon's plea canvass failed and his case was placed on the trial list. Skyers withdrew as Barjon's counsel, and Barjon obtained different counsel. Contrary to their original plan, Barjon exercised his right under the fifth amendment and would not testify at the petitioner's trial.

Jury selection in the petitioner's criminal case was to begin in early October, 2012. Skyers only began to discuss the defense investigation with Joseph Marchio, then with JBM Private Investigations and Security, LLC (JBM firm), during jury selection. By October 4, 2012, six jurors and a number of alternates had been selected for the petitioner's case. Judge Kavanewsky advised Skyers that he should be prepared to present defense witnesses at 10 a.m. on October 17, 2012, and the matter was continued to October 16, 2012, for the presentation of the state's case.

On October 10, 2012, Skyers hired the JBM firm to investigate the petitioner's case. Julio Ortiz, an investigator with the JBM firm, prepared a memorandum detailing his investigation efforts from October 10 through October 18, 2012. Ortiz did not provide portions of his report to Skyers while he was conducting his investigation, but did provide Skyers with the entire report on October 18, 2012. The court found that by October 18, 2012, it was too late. The state had presented its case from October 16, 2012, into the next day, and Skyers presented defense witnesses from October 17, 2012, into the next day. Both the state and Skyers had rested and presented their closing arguments on October 18, 2012, before Skyers ever saw Ortiz' report.

Skyers' focus for both the petitioner and Barjon was the pretrial phase, which included efforts to resolve both of his clients' cases via plea agreement. His strategy was to have Barjon plead guilty and then testify on behalf of the petitioner. That strategy unraveled when Judge Devlin vacated Barjon's guilty plea, and Barjon obtained substitute counsel and declined to testify in support of the petitioner's defense. Although Skyers reviewed police reports, statements, and other related documents, and spoke to potential witnesses the petitioner identified, the court found no evidence that he

conducted any other investigation prior to October 10, 2012.

According to Skyers, his practice with regard to pretrial investigations is case dependent. In some cases he waits to the onset of trial to begin investigating. The short notice that is given when a case is called for trial is a factor that affects the timing of an investigation. Other factors that affect his investigations are the severity of the criminal charges and the likelihood the matter will be settled by a plea agreement. In the petitioner's case, Skyers thought the investigation would be relatively simple. Although he thought it important to have the results of the investigation before he presented the petitioner's case, he did not receive the results of the investigation until after he had made his final argument. Aside from the jury's rendering its verdict, the trial was over.

The court found that because the petitioner and Barjon were in similar positions and their defenses were essentially identical, Skyers never considered that an investigation might uncover information that was helpful to one of his clients but not the other. He ignored that possibility despite the fact that the petitioner never indicated any interest in resolving the matter by way of a plea agreement. The petitioner intended to go to trial, which Skyers knew from the beginning of his representation of the petitioner. Nevertheless, Skyers acted as if his primary duty was to resolve the criminal case by means of a plea agreement because he thought that was in the petitioner's best interest.

The court was familiar with the standards applicable to claims that counsel rendered ineffective assistance for failing to conduct an adequate investigation. "[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012), quoting *Strickland* v. *Washington*, supra, 466 U.S. 686. "To establish ineffective assistance of counsel under the *Strickland* standard, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 544, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015).

"Inadequate pretrial investigation can amount to deficient performance, satisfying prong one of *Strickland*, as [c]onstitutionally adequate assistance of counsel includes competent pretrial investigation. . . .

Although [courts] acknowledge that counsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it . . . [e]ffective assistance of counsel imposes an obligation [on] the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case. . . . In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision to make particular investigations unnecessary." (Citations omitted; internal quotation marks omitted.) Id., 546–47.

The habeas court applied the foregoing factors to the petitioner's claims against Skyers for failing to timely and adequately investigate the petitioner's case, and concluded that Skyers' representation was deficient. From the outset, the petitioner claimed that he was innocent and that he wanted to go to trial. Although such a claim of innocence could eventually result in a guilty plea, a reasonably competent criminal defense attorney would have conducted an investigation into the defense well before trial. The benefit of an investigation could have been used in attorney-client discussions, plea negotiations, and trial preparation. Had Skyers investigated earlier, he may have garnered information that the petitioner's and Barjon's defenses were not as aligned as he initially thought. The same duty that Skyers thought obligated him to pursue plea negotiations should also have compelled him to investigate the matter earlier in his representation of the petitioner. The court found no reasonable strategic reason for Skyers to have delayed investigating and no reasonable decision that made the investigation unnecessary. The court, therefore, found that the petitioner had met the first prong of *Strickland.*

## B

The court then analyzed the second, or prejudice, prong of *Strickland.* The petitioner alleged that he was prejudiced because Skyers (1) did not call Azcalt to testify at the criminal trial and (2) presented damaging testimony from Jean-Philippe. The court found, however, that the petitioner failed to demonstrate that he was prejudiced by Skyers' alleged deficient performance. "To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland* v. *Washington*, supra, 466 U.S. 694. In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities." (Internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, supra, 159 Conn. App. 553–54.

### 1

The petitioner claims that he was prejudiced by Skyers' failure to call Azcalt as a witness for the defense. We agree with the habeas court that the failure to call Azcalt did not undermine the jury's verdict.

The court found the following facts. Azcalt was working in the laundromat where Aldof ran when he left the store and she saw him bar the door to the man who was chasing him. As to his investigation, Ortiz met with Azcalt at 7 p.m., on October 18, 2012, while the jury was deliberating, and stated that she was working in the laundromat and monitoring the surveillance camera. She noticed Aldof walking on the sidewalk when he ran into the laundromat and held the door shut to prevent a single black man from entering. Aldof asked her to call the police because he was being robbed. Azcalt only saw one man trying to get into the laundromat and did not see a weapon. Azcalt did not testify at the habeas corpus proceeding, and therefore the only evidence the petitioner presented of what she may have testified to was in Ortiz' summary.

Azcalt's statement to Ortiz was consistent with Aldof's testimony that he fled to the laundromat and held the door closed to prevent one man from entering. Notably, Aldof did *not* testify that the four men in the store followed him. Santora testified that she saw only one man fleeing on foot when Aldof flagged her down. Azcalt's testimony, therefore, would not have undermined Aldof's testimony about what happened in the store, a place she had never been. Skyers was concerned, however, about the statement Azcalt gave to the police in which she stated that she saw three men outside the laundromat, which conflicted with the petitioner's and Barjon's version of events that they remained in the car. The court concluded that even if Skyers had called Azcalt to testify at the criminal trial, and she testified in accord with the statement she gave Ortiz, she would not have undermined Aldof's testimony regarding the events that took place in his store. The court therefore concluded that the petitioner failed to prove prejudice. Having undertaken a plenary review of the petitioner's claim, we agree with the court's well reasoned analysis.

### 2

The petitioner also claims that the habeas court improperly concluded that he was not prejudiced by Skyers' calling Jean-Philippe as a defense witness at trial. We disagree.

The court found that Skyers was obtaining authorization for Ortiz to interview Jean-Philippe on October 12, 2012. Ortiz met with Jean-Philippe on October 15, 2012, at which time Jean-Philippe gave him a written statement. In his statement, Jean-Philippe stated that he entered the store alone and unarmed to collect money

he had won on a bet. On October 17, 2012, Jean-Philippe testified at the petitioner's criminal trial that he got out of the car alone and went into the store to collect his winnings, and that the petitioner remained in the car, which was consistent with the petitioner's version of events. The damaging part of Jean-Philippe's testimony occurred on cross-examination when he testified that he was from New Jersey and that he had a criminal record.[15] The court found that the petitioner exaggerated the harm he attributes to Jean-Philippe's testimony. The jury obviously credited Aldof's version of the robbery that four men entered his store and that he identified the petitioner, whom he knew, as one of those men.

The court found that Jean-Philippe's testimony did not undermine its confidence in the outcome of the criminal trial. It therefore concluded that the petitioner had failed to demonstrate that he had been prejudiced by Jean-Philippe's testifying as a result of the untimely investigation Skyers initiated. The petitioner therefore failed to meet the second prong of *Strickland*. We have reviewed the record, including Jean-Philippe's statement and his testimony at the petitioner's criminal trial, and agree with the habeas court's conclusion. Although Jean-Philippe testified on cross-examination that he was from New Jersey and that he had a criminal record, which was not helpful to the petitioner,[16] he testified that he alone entered the store, which was consistent with the petitioner's version of events. Counsel was faced with a difficult problem given Aldof's testimony that he recognized the petitioner as one of the four men who entered the store. We agree with the habeas court that the petitioner was not prejudiced by Skyers presenting Jean-Philippe's testimony because he knew or should have known it would have been damaging to the petitioner. Jean-Philippe testified in accordance with the petitioner's theory of the crime.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although our Supreme Court dismissed the petitioner's direct appeal prior to oral argument on the petitioner's habeas corpus appeal, neither party brought that fact to this court's attention.

[2] The petitioner raised four claims in his direct appeal, including a claim that "the trial court [*Devlin, J.*] violated his sixth amendment right to conflict free counsel by inadequately canvassing him as to his desire to proceed with retained counsel who had previously represented both him and one of his codefendants in the case . . . ." *State* v. *Tilus*, supra, 157 Conn. App. 455.

[3] We note that the name of the robbery victim has been spelled inconsistently, e.g., Rene Aldof and Rene Adolph. The indictment filed against the petitioner states in relevant part: "stole certain property from one RENE ADOLPH." In the transcript of the petitioner's criminal trial, the victim's name is denominated Rene Aldof, which is the denomination used by this court in its decision adjudicating the petitioner's direct appeal. See *State* v. *Tilus*, supra, 157 Conn. App. 455. In its memorandum of decision, the habeas court identified the victim as Rene Aldof. In this court's decision regarding the direct appeal of the petitioner's codefendant Jacques Louis, however, the robbery victim is identified as Rene Adolph. See *State* v. *Louis*, 163 Conn. App. 55, 134 A.3d 648, cert. denied, 320 Conn. 929, 133 A.3d 461

(2016). For consistency with respect to the petitioner's criminal trial, direct appeal, and habeas case, we denominate the victim of the robbery Rene Aldof.

[4] In this court's decision in *State* v. *Louis*, 163 Conn. App. 55, 134 A.3d 648, cert. denied, 320 Conn. 929, 133 A.3d 461 (2016), two of the robbery suspects were identified differently, namely, Jean Louis and Guillatemps Jean-Philippe were introduced as Jacques Louis and Guailletemps Jean-Philippe. See id., 57—58.

[5] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[6] Our Supreme Court certified two issues for appeal, but only the issue "(1) Did the Appellate Court properly determine that the trial court secured a valid waiver of the [petitioner's] constitutional right to conflict free representation"; *State* v. *Tilus*, supra, 317 Conn. 915; is relevant in this appeal. Our Supreme Court eventually dismissed the petitioner's appeal entirely. See *State* v. *Tilus*, supra, 323 Conn. 785.

[7] The habeas court reasoned that having our Supreme Court decide the certified claim of waiver "will increase the chance that the proper law is applied to the petitioner's claim . . . promote judicial economy by not having this court and the Appellate Court in the probable appeal from this court's decision address a claim that may turn out to be unnecessary, and the petitioner will not be harmed by a dismissal without prejudice."

[8] At the hearing on the motion to reargue, the petitioner conceded that any conflict before Judge Devlin could only be prospective. The habeas court concluded that the petitioner's prewaiver claim of conflict that affected Skyers' representation is outside the scope of any such waiver and was not addressed by this court and was not before our Supreme Court.

[9] The habeas court did not amend its decision with respect to count two, in which the petitioner alleged the ineffective assistance of trial counsel.

[10] We note that a plea agreement between a defendant and the state is not binding on the judicial authority that sentences a defendant who has pleaded guilty pursuant to a negotiated plea agreement. See, e.g., *Alexander* v. *Commissioner of Correction*, 103 Conn. App. 629, 638, 930 A.2d 58, cert. denied, 284 Conn. 939, 937 A.2d 695 (2007); *State* v. *McCulloch*, 24 Conn. App. 146, 148, 585 A.2d 1271 (1991).

[11] We are mindful that the right to be represented by counsel of one's choosing is a constitutional right. See *Powell* v. *Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *State* v. *Peeler*, 265 Conn. 460, 470, 828 A.2d 1216 (2003), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710 (2004).

[12] The habeas court's revised memorandum of decision contains the following footnote. "[S]ubsequent to [the] original memorandum of decision, but prior to this revised memorandum of decision, the Appellate Court released its decision in another of the codefendant's direct appeals. See *State* v. *Louis*, 163 Conn. App. 55, [134 A.3d 648, cert. denied, 320 Conn. 929, 133 A.3d 461] (2016). The facts as found by the jury in that trial, conducted subsequent to the petitioner's and in which Jean Louis and Barjon were tried together, are consistent with those from the petitioner's jury trial. . . . Louis' theory of defense was that he was merely present at the time of the robbery and that [Adolf's] testimony was not believable. Barjon also claimed that he merely was present at the time of the robbery, that [Adolf] was not credible, and that Jean-Philippe acted alone in order to collect an unpaid debt from [Adolf], who allegedly ran an illegal lottery from the market. . . . The Appellate Court in a footnote noted that [t]he jury found Barjon guilty of all four charges against him. In a separate trial, a jury found [the petitioner] guilty of robbery in the first degree. . . . Prior to [Louis'] trial, Jean-Philippe pleaded guilty to both robbery in the first degree and conspiracy to commit robbery in the first degree." (Citations omitted; internal quotation marks omitted.)

[13] The habeas court found that the petitioner abandoned his claims that Skyers failed to cross-examine or otherwise challenge adequately Aldof's testimony, failed to cross-examine or otherwise challenge adequately Tavares' testimony, failed to obtain and present exculpatory video surveillance evidence, prepared a defense that relied on the testimony of a witness who would invoke his right not to testify; and, during sentencing, failed to inform the trial court of the sentence imposed on a codefendant who was more culpable than the petitioner.

[14] The petitioner abandoned this claim on appeal.

[15] The state presented evidence that the firearm that was recovered near the scene was connected to an earlier crime in New Jersey. The statement

Ortiz obtained did not indicate that Jean-Philippe was from New Jersey or that he had a criminal history.

[16] The petitioner also claims that Jean-Philippe's testimony was harmful because it disclosed that the firearm was traced to New Jersey. That evidence, however, was presented in the state's case-in-chief. "A nine millimeter pistol was discovered on the ground in the vicinity of the trash cans where Santora had apprehended the fleeing suspect. The pistol was taken into evidence and later sent to the firearm and toll mark division of the state forensic science laboratory for testing and analysis. The pistol was examined, test fired and found to be operable. A search of a national database revealed that the pistol had been used in a recent incident in New Jersey." *State* v. *Tilus*, supra, 157 Conn. App. 457–58.